UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK,

UMAR. Ali.

PLAINTIFF

VS.

Daniel Diperri. # 18192
Captain R. Singletary # 1004
Captain E. Vega  # 180
Brian Rees # 17045
Deputy Warden C. Lemon # 109
Aadam Glenn # 18616
Ernest Brown # 1335
WARDEN OF G.R.V.C, Rose Agro,
WARDEN OF R.N.D.C, E. Bailey,
WARDEN OF R.N.D.C .E .Duffy,
Department Of Corrections .Dora Schriro,
Board of Correction. Hildy J. Simmons,
All officers whom were present during
the June 2, 2009 assault, John doe's
HEARING OFFICER OF Alleged July
16, 2009 Infraction-

DEFENDANTS,

CIVIL RIGHTS ACT

42 U.S.C § 1983

FIRST AMENDED COMPLAINT

12 - CV - 03947

(GBD) (MHD)

JURY DEMAND

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11·27·12

Pro SE Plaintiff Umar Alli, for this Complaint alleges as follows;

# PRELIMINARY STATEMENT

1. Plaintiff Umar Alli is the victim of a Perverse and Pervasive Practice Sanctioned at the highest levels of the New York City Department Of Correction's (the "Department" or "DOC") in which Correction officers, Captains, Deputies and Wardens Of New York City Jails/facilities (Rikers Island) Sanctioned, tolerated, facilitated, Participated, Or Covered UP the Unnecessary Unwarranted, Malicious Use's of force against adolescent Pre-trial detainee's. (Adolescent are youth from 16 to 18 years old)

2. Correction officers, Deputies, Captain's, Wardens, DOC and the Board Of Correction (the "Board" or "BOC") Would Sanction, Participate, Or cover UP the excessive Use's Of force against adolescent detainee's. The assault would routinely Occur within the Confines Of said detainee's Cell or a area within the facility Were no video Survilence ("D-V-R System" or "Cameras") is located.

3. These assaults occured routinely to adolescent detainee's whom refused to follow the "Program", or were allegedly labeled by officials (Correction officers, Captains, Deputies, Wardens, DOC and BOC) as being a snitch (inmate whom files Complaints or grievances to Prison officials or any administrators Within DOC Or BOC").

4. These incidents normally result in servere injuries Of the detainee. Yet many of these Practices go Unreported or Uninvestigated due to the officials "Sweeping the events under the rug", Or inmates fearing to report said actions due to the Probable Chances Of retaliation.

5. After these assaults detainee's are denied showering, daily life necessities, and telephone usuage. The detainee's are also giving a large abundance Of time in Punitive Segregation ("Box" or "SHU") for Charges that are falsified, Not supported by evidence and or for Charges which they never had a opportunity to be heard being that they wasn't Present during the alleged disciplinary Proceeding. If said hearing was held in the Prescence of the detainee, his "Due Process rights Were Violated. The detainee's Would often have no knowledge of there sentence to the SHU because of the denial Of a hearing disposition.

2

6. The Stated Customs and Practices Occured for the Purpose to control, discipline and embed fear to the adolescent detainee's. Also to Prevent detainee's from reporting the malicious assault to their relatives or investigating authorities or agency's.

7. The Unconstitutional Practices that daily occur have been uncovered and substantiated by investigations of the New york City Department of investigation, D.O.C's Inspector general, D.O.C, B.O.C, and THE Prisoners Rights Project. Due to the countless criminal indictments, law suits state and Federal. Also the records of countless Prison Officials whom have been disciplined, complained upon, fired and removed from assigned Post. Despite the countless Prision Officials whom were complained upon or disciplined countless Official have "sliped through the cracks" never even being at the minimal investigated nevertheless disciplined.

8. To cover these Unconstitutional Practices Prision Officials formed a custom to conspire to make false reports on the incidents stated herein. This custom was termed "Write with Us". Prision Officials also intentionally fail to answer detainee's complaints or grievances and or document or conduct investigations for the recieved complaints and grievances, so it can be Presumed these incidents never occured or took Place as the officials falsely alleged.

9. The Pretrial detainee adolescents are housed In THE New York City's Department of Correction Rikers Island ("Rikers") Facility Robert N. Davoren Center ("R.N.D.C" or "A.R.D.C"). Rikers Island Consist of Approximately 16 facilities. Which only three can house adolescents, these three (3) facilities are as follows; (1) Robert. N. Davoren. Center ("R.N.D.C" or "A.R.D.C") R.N.D.C holds Pretrial detainee's whom are in general population, (2) George R. Vierno. Center ("G.R.V.C" or the "beacon") with the ability to house Adolescent whom are placed in the box and, (3) Otis. Bantum. Correctional. Center ("O.B.C.C" or "O-Boy") Which also holds adolescents in the box.

10. The above stated facilities within Rikers Island subject Adolescents to the Practices and Customs stated throughout this Complaint. Not limited to facilities stated above Rikers Island have a history of Said Conduct or Similar Conduct as a whole.

11. On information and belief, as early as September 2003 a former correction officer Roger Cullen, "See, Jackson v. City of New, Et al 04 Civ 5799, In his disposition testified he witnessed and or complained to the department about the instances of Corruption involving Misconduct ranging from excessive force, to lying, and falsifying reports.

12. In many instances inmates have sought to reveal these unlawful Practices. See, Andy Ramos v. Capt. Merced Et. Al 10-cv-8465(JGK)(GWG). Where Ramos a Pre-trail detainee adolescent was assaulted in the mini Clinic resulting in servere injuries. Ramos was deprived daily life necessities, adequate medical care, and Phone Usuage after the alleged assault. Prision officials also failed to answer any of the complaints he filed.

13. See Also, Fountain v. City of New york 10-civ-7538(BSJ)(KNF) Albert Fountain was a Pre-trail detainee adolescent whom was maliciously assaulted. Said assault resaulted in servere injuries.

14. In R.N.D.C alone from 2008 untill today's date countless Suits, Complaints, and allegations of the stated Practices has Arose.

15. Adolescent detainee's were routinely assaulted in the Confines of there Cells, Mini-Clinic, And or any other location within the facility that dont Contain Cameras. These assaults were forms of retailation in response to detainees Prior conduct, Prior attempts to exhaust administrative remedies, and or for a detainee "violating an Prision officials tour": "violating my tour" is a term used by officials when a detainee fails to follow any rules set by D.O.C, during that official's working shifth or in the Prescence Of Said Official.

16. D.O.C'S R.N.D.C has an extensive history of Misconduct and failing to assure adolescent inmate are given the required adequate care, Custody and Control. Throughout April and May of 2012 The daily News wrote ample articles revealing How R.N.D.C was dishonored and Awards for adequate care custody and Control, Lack of use of force against inmates by Staff, and inmate on inmate fights, were revoked. The awards were revoked due to officers falsifying reports and sweeping incidents of assaults and Misuse's of force under the rug. "Sweeping under the rug" is a term for the failure to report incidents, or alleging Contary to the facts within reports

17. One of the many motives for Prision Officials Practices Stems from the Municipal and Supervisory defendants failure to Properly train, supervise, and discipline. Inadequate training, Inadequate Systems for investigating and discipling Staff for the Misuse of force and failure to implement D.O.C'S use of force Policy Plays a significant role in the continuation of these unconstitutional Practices.

18. Facility investigation, investigations of misuse of force requires several requirements, Yet dozens of these incidents of UOC's of force or use's of excessive force goes unreported or unfounded. The deficiencies within these Processes are as stated: (1) A agency lack of thoroughness

(2) failure to Pursue Unanswered questions, (3) failure to address whether staff conduct actually complied with Policy, (4) Inadequate efforts to identify and interview witnesses, (5) failure to explain how conflicting evidence was resolved (6) The lack of a double standard of interpreting medical records and injuries Photograph, (7) Magnification on discrepancies in inmates statement and failure to inquire into discrepancies in staff statements, (8) Use of boilerplate language and, (9) reaching for some basis to approve staff conduct.

19. The systematic deficiencies in the above stated areas are a significant cause of the Misuse of force. The failure of the City of New York, D.O.C, and B.O.C to guide and train its officers in the correct way to use force if ultimately necessary, and its failure to monitor, investigate and discipline the misuse's of force has allowed and indeed even inevitable and unacceptably caused the high rate of Misuse of force by staff on detainee's. These Practices have been revealed in many cases such as but not limited to "Fisher v. Koehler, 692 F. Supp 1519 (S.D.N.Y 1989)

20. While a single incident may be viewed as mere negligence, yet there are repeated examples of the use's of unneccesary force against adolescents detainee's, falsifying reports, sweeping incidents under the rug and, inadequate care, custody, and control for adolescents.

21. In March 2007 Tyreek Shuford, a teenage inmate at R.N.D.C was seriously and visibly injured by the Practice of correction officers. See Shuford v. City of New York, 09 Civ. 00945.

22. On February 14, 2008, the Bronx District Attorney ("DA") Indicted Correction Lloyd Nicholson. The DA charged officer Nicholson with gang assault, assault, and official misconduct due to his actions within R.N.D.C

23. On October 17, 2008 teenage detainee Christopher Robinson died while under the supervision of D.O.C in R.N.D.C. Robinson was forced to bled to death in his cell

24. Through D.O.C's Elaborate report system the City and the supervisory defendants were aware of the pattern of a large number of incidents involving staff on inmate (adolescent) violence yet failed to take sufficient steps to curb such actions. The above stated Officials were also aware or should have been aware of the individual defendants within this action history of misconduct, well before and after plaintiff was assaulted, yet failed to discipline or take remedial action to prevent the furthering of Unconstitutional Practices.

25. Through the countless cases, allegations, suits, investigations, and departmental reports, the City, D.O.C, and B.O.C have been made aware of the widespread Practice by Prison officials of sanctioning, encouraging, participating or covering up these unlawfull Practices. A Practice that causes further abuse. Defendants conduct constitutes a Municipal Policy, Practice and custom, deeply emedded in the culture of D.O.C implementing law.

5

26. Although this information was known to the department, Board, and City, defendants failed to protect and were deliberately indifferent to the dangers posed by their insubordinate employee's.

27. As a result Plaintiff Umar Alli was maliciously assaulted in his cell and a unauthorized area within B.N.D.C by Prision Officials whom have been complained upon, disciplined, or sued for the same conduct.

28. Furthermore Plaintiff was subjected to the City's, department, Warden's, B.O.C and D.O.C Practice of imposing unlawfull and unconstitutional disciplinary confinement without due process or the following of d.O.C created rules and regulations governing disciplinary Proceedings. These sentences were often atypical and significant.

29. The sentences imposed on the Pre-trail detainee's in Punitive Segregation was intended as punishment. Prision Officials intend to turn detainee's into "Box monester's", Box monster is a term used by Prision Officials for inmates whom have a large amount of Punitive Segregation time (Days). The Process of turning a detainee into a box monster is typically the written a detainee mutiple falsified infractions (Misbehavior reports), (2) Denying due Process at the disciplinary hearing, then imposing a significant sentence (3) Denying the detainee the right to attend the alleged disciplinary, then imposing a significant sentence, (4) Creating false entries on the detainees CPSU (Central Punitive Segregation Unit") Profile Sheet, Containing a falsified infraction History with a significant owed Punitive Segregation sentence, (5) imposing mutiple disciplinary sentences for the same incident or Conduct (6) imposing disciplinary segregation sentences for false infractions, disciplinary hearings in which due process and D.O.C regulations were violated, denying the detainee to appear at alleged hearing, and making false infraction history records all regardless of the amount of disciplinary days imposed and (7) the continuation of any Prior Punitive Segregation sanction following the completion of a criminal sentence or release from D.O.C Custody lastly (8) the failure to adequately conculate the days already served in Punitive segregation, thus forcing the detainee to complete or serve additional unwarranted Punitive Segregation time.

30. The above stated Policy and Custom deeply embedded in the Culture of DoC, B.O.C, and the City of New York Constituted impermissible Punishment of a Pretrail detainee.

31. The "continuation" of the Punitive Segregation sanction ignores the well established fact that a Punitive Segregation Sanction is not a Criminal Sentence of Punishment, but instead a Civil Sanction distinguishing Prison discipline from Criminal Prosecution in double Jeopardy Context. At the time inmates were returned to Punitive Segregation after release from D.O.C Custody, or at the time he was returned as a Convicted Prisoner Violated due Process. Pre-trial detainee have a fourteenth amendment right to be free from punishment Prior to Conviction. Failure of the department of Corrections to Provide Pre-trial with any new hearing before the detainee was Placed in Punitive Segregation Violated Procedural due Process. A Pre trail detainee Can not be held In Punitive Segregation as a Punishment for infraction of disciplinary rule Which occured while Serving Prior Sentence. Pursuant to due Process Prisoner was entitled to hearing in Connection with his return to Punitive Segregation as a Pre trial detainee or Convicted Prisoner. The Continuation of the Sanction imposed on inmate during Prior confinement is Considered a disciplinary sanction imposed on a new Prisoner, and therefore entitled a new hearing.

32. Detainees Placement in Punitive Segregation Without adequate Process occured Pursuant to D.O.C Custom. When a imate was in D.O.C Custody with time remaining on a Punitive Segregation sanction imposed on a Prior arrest, it was d.O.C and Supervisory defendants Practice And Custom to Confine the detainee in Punitive Segregation based on the Pre-existing sanction.

33. Eric Lesane a Pre-trail detainee Was subjected to the "box monster" Practice Subdivision 7 Which Consist of the continuation of a Prior discipline Sanction after release from D.O.C Custody. Mr. Lesane have taken Several attempts to reveal this Unlawful Practice. By writing Complaints to the Wardens of Each facility he was Placed, Writing Complaints to D.O.C and B.O.C. Mr. Lesane also filed a State law suit and grievances. each Complaint written described this Practice.

34. Santos Lopez a Pre-trail detainee was subjected to the box monster Practice Subdivision Seven(7), Which Consist of the Continuation of a Prior disciplinary sanction after release from D.O.C Custody. Mr. Lopez has made Serveral attempts to reveal these Practices by the filing of grievance and Complaints to D.O.C, B.O.C and Wardens. He also filed a State Suit (Article 78) Chanlleging Said Practices.

35. Willie Stanley a Pre-trail detainee Whom was subjected to the box monster Practice Subdivision (7), four times between the year 2009 through 2012. Each time Mr Stanley returned to D.O.C he attempted to reveal these Practices by the filing of griences, Complaint

and State Law Suits.

36. Justin Harris was also subject to these Practices and Sought ample forms of relief, namely the writing of Complaints and Grievances.

37. This Practice has been long standing and has effected millions of inmates including Plaintiff, Many inmates have attempted to Challenge these Practices, while others took no effort due to the fear of retailiation and or believing Said Conduct was lawfull. As a result Plaintiff Suffered 456 days in Punitive Segregation

38. The Police and Practice of denying due Process and DOC disciplinary Procedures have been revealed in but not limited to the Cases Stated below. SEE "Chad Hooks V. New York City Dept of Corrections, 929 N.Y.S. 2D 200, 31 Misc. 3D 1225 (N.Y. Supp. 2011)" Stating Prision officials Violated Hooks Due Process SEE Also. Henerson v. City of New york Dept of Corrections 711 N.Y.S. 2d 180 274 A.D. 2D, 328 (N.Y. A.D 1st Dept)

39. The City, supervisory defendants and individual defendants failure to cease Said Customs and Poicy's despite knowledge bespeaking a deliberate indifferent by official's to the agony engendered haphazard and ill Conceived Procedures. Thus Causing the Procedures Plaintiff was subject to and Constituting municipal liability.

## JURISDICTION AND VENUE

40. Jurisdiction is Proper in this Court Pursuant to 28 U.S.C § 1331, due to plaintiff bringing Constitutional Claims under 42 U.S.C § 1983, as well as federal law Claims. The Court has Supplemental Jurisdiction over plaintiff's other Claims Pursuant to 28 U.S.C § 1367.

41. Venue is Proper Pursuant to 28 U.S.C § 1391(b), as the events giving rise to this action occured within this district. Venue is also Proper due to defendants being located or doing business in this distric

## DEMAND FOR JURY TRIAL

42. Plaintiff demands a Jury Trial in this action

# THE PARTIES

43. Plaintiff Umar Alli is a Citizen of the United States and is Currently housed at ~~Singing~~ Auburn Correctional facility. During the relevant time Period and or a Portion of the relevant time Periods, Mr. Alli was a teenage (Adolescent) Pre-Trial detainee in D.O.C's Custody.

44. At all times relevant hereto defendant Officer Dipierr was a security officer of Rikers Island R.N.D.C. Acting under color of State law in the Capacity of a agent, Servant, and employee of the defendant City of New york. Within the scope of Mr. Dipierr employment, he was responsible for the Safety, Care, Custody, And Control of the detainee's within his facility or Custody, assuring the care, Custody, and Control of inmates are Carried Out in a manner Consistent with the legal mandates that govern the Operation of D.O.C Facility's. Including but not limited to departmental Policy, directives, Protocol and Procedures, also federal law, and United States Constitution. Mr. Dipierr has Personal involvement and direct Participation in the malicious Unwarranted Use of excessive force and assault and battery inside Plaintiffs Cell and a Unauthorized area within R.N.D.C. Defendant directed, Participated, Sanctioned, facilitated, Covered UP, and or witnessed yet failed to intervene to Cease Or Prevent the malicious June 2 2009 assault. Mr Dipierr is being sued in his individual and Official Capacity.

45. At all times relevant hereto defendant Officer "Resse" was a security officer of Rikers Island R.N.D.C. Acting under Color of State law in the Capacity of a agent, Servant, and employee of the defendant City Of New york. Within the Scope Of Mr. Resse employment, he was responsible for the Safety, Care, Custody, and Control of the detainee's within his facility, Custody, or control. Also for the assurance the Care, Custody and Control of inmates are Carried out in a manner Consistent with legal mandates that govern the Operation of D.O.C facility's. Including but not limited to departmental Policy, directives, Protocol and Procedures, also federal law, and United States Constitution. Mr. Resse has Personal involvement and direct Participation in the malicious Unwarranted Use Of excessive force On June 2, 2009 inside Plaintiff's Cell and a Unauthorized area within R.N.D.C. Mr. Resse directed, Participated, Sanctioned, facilitated, Covered UP, and or witnessed yet failed to intervene to Cease Or Prevent said assault. Mr. Resse is being sued in his individual and Official Capacity.

46. At all times relevant hereto Adjudication Captain ~~Ernest Brown~~ Shield No. 472 Was the Adjudication Captain who Presided over Plaintiff's alleged June and July disciplinary hearings. Acting under color of state law in the Capacity of a Agent, Servant, and employee of the defendant City of New york. Within the scope of Mr. Medina employment she was responsible for assureing disciplinary hearing are held in accordance with Civil Contempts, federal due Process Clause, and departmental rules, Policy, Procedures and directives governing facility disciplinary hearing, and due Process. Defendant ~~Brown~~ has Personal involvment and direct Participation with Partaking in the underlying box master Practice and issueing a unlawful sentence in Punitive Segregation without adequate due Process. Defendant medina is being sued in both the individual and Official Capacity

47. Defendants DiPierr, Besse, and ~~Brown~~ are Collectively referred to as individual defendants, Also Aadam Glenn

48. At all times relevant hereto Defendant Captain Vega Was a Captain within Rikers Island R.N.D.C. Acting under Color of State law in the Capacity of a agent, Servant, and employee of defendant city of New york. Within the scope of his employment, he was responsible for the safety, Care, Custody, and Control of inmates are Carried Out in a manner Consistent with the legal mandates that govern the operation of D.O.C facilities. including but not limited to departmental Policy, directives, Protocol and Procedures, also federal law, and United States Constitution. Captain Vega has Personal involvement and direct Participation in the malicious unwarranted use of excessive force On June 2 2009 inside Plaintiff's Cell within R.N.D.C. Captain vega directed, Participated, Sanctioned, facilitated, Covered up, and witnessed yet failed to intervene to cease or Prevent said assault. Captain Vega is being sued in his Official and individual Capacity.

49. At all times relevant hereto defendant Captain Singletary was the security Captain of R.N.D.C. Acting under color of state law in the Capacity of a agent, servant, and employee of the defendant City of New york. Within the scope of his employment, he was responsible for the security of R.N.D.C, the safety, Care, Custody, and Control of the detainee within his facility Control or Custody. Also for the assurance

Use's of force against the individual is carried out in a manner consistant with federal law, federal Constitution, and the departmental Policy, Procedure, Protocol and directives. Including but not limited to state law. On June 2 2009 within Mr. Allis' Cell and a Unauthorized area within R.N.D.C, Captain Singletary Participated, sanctioned, facilitated, Covered up, and witnessed Yet failed to intervene to Cease or Prevent the malicious assault. Defendant Singletary is being sued in his official and individual Capacity.

50. At all times relevant hereto Board of Corrections ("BoC") Commissioner "Dora Schriro", was the highest ranking DOC Official. Acting under color of state law in the capacity of a agent, servant, and employee of defendant City of New York. As Commissioner Schriro was entitled to visit, inspect and appraise the management of Correction facilities with specific attention to matters such as safety, security, health of inmates, sanitary Conditions, rehabilitative Programs, disturbance and fire Prevention and Control Preparedness and "Adherence to laws and regulations governing the rights of inmates. See Correction law § 45(3) The Commission shall Promulgate rules and regulations to Or establishing minimum standards for the care, Custody, Correction, treatment, Super vision, discipline, and other Correctional Programs for all Persons Confined Correctional facilities... See Correction law § 45(6) The Commissioner of Corrections shall have the superintendence Management and Control of the Correctional Facilities in the department and of the inmates Confined therein

11.

and of all matters relating to the government, discipline, Policing Contracts and fiscal concerns thereof. He shall have the power and it shall be his duty to inquire into all matters connected with said Correctional Facilities. He shall make such rules and regulations are not in conflict with the statutes of this state... Correctional Law § 112 (4). Defendant schiro Participated, sanctioned, Permitted, tolerated, knew of, should've knew of and/or covered the Practices described throughout this matter. Schiro was on notice of the continuance of the Unconstitutional Practices, She created and tolerated said Policy, and was deliberately indifferent to the established Right. Schiro is being sued in her Official and individual Capacity.

51. At all times relevant hereto Hildy J. Simmons the Chair of the Board of Correction, Acting under color of State law in the capacity of a agent, Servant, and employee of defendant City of New York. Ms. Simmons, as commissioner/Chair of the Board (BOC) is responsible for the Policy, Practice, Supervision, implementation, and conduct of all doc Personnel including but not limited to the defendants herein. The Board Plays as a citizen's Policy complaint review council and is responsible for the investigation and discipline of DOC matters. As chair simmons was Provided on a daily basis with reports of applications of similiarly situated incidents Closely related in time governing the Practices described herein. Simmons also received ample Complaints and Grievances, from mr. Alli, informing her of the ～～～ Unconstitutional violations occurring. Yet she failed to take any remedial action.

12.

Ms. Simmons was aware and tolerate of the Practices, Customs, and Policy by subordinate Prison officials, including those inconsistent with formal Policy. These Practices are so longstanding and deeply embedded in the Culture of DoC/BoC they constitute unwritten departmental Policy and Customs. Simmons has Personal involvement and direct Participation in the underlying action and is being sued in her individual Capacity and official Capacity.

52. At all times relevant hereto and a Portion relevant hereto defendant Warden of A·B·D·C (B·N·D·C) Edmund Duffy ("DUFFY") Acting under Color of state law in the Capacity of a agent, Servant, and employee of the defendant City of New York. As Warden Duffy was responsible for the Care, Custody, and Control of each detainee confined to his Facility. Duffy was responsible for the Supervision and disciple of Correctional official, and implementing and enforceing DOC Policy. These responsibilities were required to be Carried out in a manner consistent with the legal mandates that govern the operation of the DOC facilities, namely the DOC Policies, Procedures, directives and Protocols. Duffy knew of, should've knew of, Sanctioned, facilitated, and Condoned the routine Practices described herein. Duffy has Personal involvement in the underlying complaint and is being sued in his official and individual Capacity.

53. At all times relevant and a Portion hereof defendant Warden of A·B·N·D·C Emmanuel Bailey was the warden of B.N.D.C during Plaintiffs re-incarceration during the year of 2010. Mr. Bailey was acting under color of state Law in the Capacity of a agent, Servant, and employee of the

defendant City of New York. As Warden, Bailey was responsible for the care, custody, and control of each detainee confined within his facility. Bailey was responsible for the supervision and disciple of Correctional Officials, and implementing and enforceing DOC Policy. These responsibilities were required to be carried out in a manner consistent with the legal mandates that govern the operation of DOC facilities, namely the DOC Policies, Procedure, directives, and Protocols. Bailey knew of, should've knew of, sanctioned, facilitated, and condoned the Practices described herein. Bailey has Personal involvement in the underlying complaint and is being sued in his Official and individual capacity.

54. At a Portion of time relevant hereto defendant Warden "Rose AGRO" was the warden of G.R.V.C. Acting under color of state law in the capacity of a agent, servant, and employee of defendant City of New York. As described within the complaint defendant Rose AGRO has Personal involvement in the underlying complaint. AGRO is being sued in her Official and individual Capacity.

55. At a Portion of time relevant hereto defendant Security Captain "Budnarie Beharri" was the Security captain of G.R.V.C., Acting in the capacity of agent, servant, and employee of defendant City of New York, under color of state law. Beharri has Personal involvement in the complaint as described herein. Defendant Beharri is being sued in his Official and individual capacity.

56. At all times relevant hereto, defendant City of New York ("City") is a municipal corporation, which through its department of corrections operates a number of

14

detention facility. The department, through its Senior Officials at the Central Office, in each facility and its Specialized Units Promulogates and implements Policies Including those with respect to the Use, reporting, and investigation of force by staff, Disciplinary hearings, and Conditions of Confinement. In addition, Senior Officials in the department are aware of and tolerate of the Practices by subordinate employee's in the jails, including those that are inconsistent with formal Policy. These Practices, because they widespread, long standing and deeply embedded in the Culture of there agency it constitutes unwritten departmental Policies and or custom. The City is Responsible for the appointment, training, Supervision, discipline and Conduct of all DOC Personnel, including the defendants referenced herein. The City is also responsible for the tolerating, sanctioning, Covering up, and or the allowance of the Continuous Policy's (municipal Policy's) described throughout this matter. The City has direct Participation and Personal Involvement and is being sued in the Official Capacity.

57. At a Portion of time relevant hereto, defendant Correction "Aodam Glenn" a officer of Rikers Island R.N.D.C. Acting under color of State law in the Capacity of an agent, Servant, and Employee of defendant City of New York. Within the scope of Mr. Glenn's employment, he was responsible for the Safety, Care, Custody, and Control of the detainee's within his facility, Custody and or Control. Also for the assurance that the Care, Custody, and Control of detainee's are Carried out in a Manner Consistent with the Legal mandates that govern the Operation of D.O.C. facility's. Including but not limited to, departmental Policy, directives, Protocol and Procedures, also Federal law, and the Federal Constitution. Defendant "Glenn" has

15

Personal involvement and direct Participation in the malicious unwarranted Use of excessive force on June 2, 2009 within Plaintiff's Cell. Officer Glenn directed, Participated, Covered up and Or witnessed yet failed to intervene to cease Or Prevent said assault. Mr. Glenn is being Sued in his individual and official Capacity

58. Defendants Captain Eddie Vega, Captain Rosney Singletary, Commissioner Dora Schriro, Chair 'Hildzy J. Simmons, Warden Edmund duffzy, Warden Emmanuel Bailey, Captain Budnarie Beharri and the City OF New York are collectivery referred to as the Supervisory defendants Also Deputy C. Lemon

## STATEMENTS OF FACT

A. Excessive use of force, Assault and Battery by defendants DiPierra, Besse, Vega, and Singletary.

59. During Plaintiff's 2009 incarceration On The New york City's Rikers Island, Within the Adolescent housing facility Robert. N. Davoren. Center (R.N.D.C) Under the misnomer Omar. Alli, Book and Case number 241-09-03754. Alli, was subjected to the long standing Policy of the supervisor defendants. The furthering and Participation in the Practice Caused Plaintiff to be maliciously assaulted, Constitutional Violations, and Physical injuries.

60. At approximatery 7 AM On the morning of June 2, 2009. In Which was a horrific day in Start for the sixteen year old youth Alli. A huge search was conducted Within the housing

Unit "3 main North" of Rikers Island R.N.D.C. The Search team consisted of approximately Twenty(20) Officers. Each housing Unit Contains two tiers in which One tier has approximately a two feet distance across from eachother.

61. The officers began to search the tier opposite from Alli. As the search was being conducted Mutiple adolescent detainee's Complained there Property was being Unlawfully and intentionally damaged and or destroyed.

62. In light of the fact that on June 1, 2009, some of the detainee's within 3 Main North Verbally abused Officers and flooded the tier Causing the officers to Write Reports, Work Overtime, and clean up the water damage. In retaliation to the detainee's actions, Is why the detainee's beleived said officers Conducted said search, and in such negitive and abusive manner. Also Not limited to said Motive, many Officers, Captains and deputy's has had Prior altacations with the detainee's within 3 Main North Or have a Personal Vendetta against Same detainee

63. After the search was Completed on the tier opposite from Alli, the tier in which Alli was located on in Cell "16" Was now being searched. Three Officers approached Alli's Cell and ordered for it to be opened. Officer brian Besse, Daniel diPierra, and Aadam Glenn Now Stood in front of Alli's Cell.

64. Officer Resse began to Focous his sight Inside Alli's Cell and became somewhat Red and Stated "damn he doesn't have nothing in his Cell to violate"! Officer Besse then demanded Alli to Strip and Pass one Clothing article to him

17

at a time. As Mr. Alli Complied with Officer Besse's order. Officer Besse deliberately tossed Alli's Clothes in the water remains. Before ordering Alli to strip Besse questioned Alli, if he was one of the Dicks who Flooded the tier and cursed out the officers. As Besse tossed the clothes in the water, he said "say something we will Fuck you up, the cameras Cant see in your cell camera gangsta. (Camera gangsta is a title given to inmates by officer Whom allege said inmate say's or does what ever he or she wants due to Camera assuring there safety.)

65 As Alli stood barefooted in the Flood water, naked all except his under wear Officer Besse then demanded Alli to hand over his underwear. Alli then refused to handover his underwear because the Officers had not Penological interest or reasonable suspicion to strip search Alli nor the other detainee's whom were illegally striped, outside the mandated requirement in accordance with the directive and Policy that govern the strip search Protocol and Procedures. Also due to Alli not having any spare clothing and not wanting his only Pair of underwear to be thrown in the Flood water. Once Alli Refused Officer resse yelled to Captain eddie vega whom was on the tier with the other Officers and Deputy's. Officer Besse yelled Captain vega your little friend is refusing the search. Captain vega then entered my Cell with Officers Besse, Diperra, Glenn and three other Officers Whom blocked the enterance of his cell.

66. Once Besse Called Captain Vega, Alli knew it was going to be trouble being that him and Captain vega

had a previous altercation a few days prior. Said incident resulted in Alli's property being damaged and him being assaulted. Alli's second incounter with Captain Vega in a hostile manner was on June 2, 2009. After and on both incidents Alli filed a grievance and was in effect of taking further action legally.

67. While in cell the officer whom was in the cell surronded Alli as the other officers guarded the door so Alli couldn't and wouldn't run out the cell. Captain Vega then asked Alli if he was refusing to comply with the search. Before Alli could reply Captain Vega punched Alli in the face. As Alli fell to his cell bed he was repeated all punched and kicked by Captain Vega, Officer Besse, Officer Diperra, and Officer Glenn. As the unknown officers blocked the door of his cell. After being assaulted by officers Besse, Diperra, Glenn and Captain Vega for what felt like a hour in duration. Captain Vega told Alli to put on his drenched clothes and clean up his bloody face and act as if he wasn't brutally assaulted.

68. Alli declined the corrupt officers attempt to sweep the incident under the rug, and attempted to push out his cell so the cameras on the tier could see his bloody and damaged condition. Alli's first attempt to make it out his cell failed, and caused officer Besse, Diperra, Glenn and Captain Vega to throw Alli to the floor and continue to assault him. After the second course of this malicious assault Captain Vega then offered Alli to sweep the incident under the rug again. Yet Alli took another attempt to push out his cell, thus this

time said attempt was sucessful. When Alli made
it to the tier he was exhausted and bloody
standing in nothing but his underwear.

69. Alli was then forced to the wall by a unknown
officer. While being pinned on the wall Alli was spiting
up blood due to the malicious and excessive use of
force. Alli mistakenly spit blood on deputy Lemon.
Once the spit blood landed on Deputy Lemon, Alli
was slamed to the ground and then hand cuffed.
officer Diperra then wraped a sheet around Alli's face
and body. Deputy lemon then ordered Captain
Singletary, officer resse, and diperra to take him
down stairs and "do me" (Assault him)

70. Alli was then escorted by Captain Singletary
officer resse and diperra, to the main intake
search room. Now inside the main intake search room
the hand cuffs were removed and Alli was given
a clean one peice gray jumper. As Alli was placing on
the jumper, captain singletary, and officer diperra
continued to make threats stating Alli would
be given another "Ass whooping" for spiting blood
on Deputy Lemon.

71. Alli was then taken to a cell like office
across the corridor from the intake search pin.
the front enterance of this Room was chained and locked.
Being that this was chained and locked and off limits
the officers and captain proceed to escort alli through
the rear door. Inside said area was small and
Equipped with a table, computer and approximately three

20

Urinal stalls. Alli was directed to go inside one of the stalls by Officer Diperra as Captain Singletary went through the draw of the table and retrieved a Urine Cup used for drug testing.

72. Officer Diperra then told Alli to Urinate inside said Cup, Alli complied and gave officer Diperra back the Cup with the lid attached. Despite the lid being attached Officer Diperra Unscrewed the lid off the cup and threw the Urine on the Wall and told Officer Besse to take a Picture Of the wall, Also stating I would be Charged for throwing Urine and testing Positive for drugs.

73. Alli was then directed to the side of the room where the table was located and ask by Captain Singletary to sign a blank form that read and titled "excessive force" While Officers Besse and diperra stood beside Alli With Gloves on and their fist clenced. Alli Respectfully told Captain singletary he wouldn't sign untill the form was completed.

74. After Alli declined to sign said form he was hit with a blow to the head by officer Diperra causing alli to be Knocked Unconscious. When Alli regained Consciousness he was on the floor being Punched and Kicked by Captain Singletary and Officers Besse and Diperra.

75. Alli began crawling to the end of the cell like Room and when he came close to the front he struggled to his feet and Ran to the bars of the cell so the Camera's May see the abuse. There weren't any camera inside said ⁖m yet there were Cameras Outside said Room. As Alli was

21

holding on the cell bars, he was being hit from behind by said officers. As the officers were trying to release alli's grip from the bars he was slamed to the floor and Repeatedlly Punched kicked and kneed. Officer Besse kneed Alli in the face as Officer Diperra kicked him in the Stomach, back and legs. Once Captain Singletary noticed the great amount of blood Pouring from Alli's face and nose, Captain Singletary ordered Officer Besse, and Diperra to Stop the assault.

76. Despite Captain Singletary order to cease the assault. Officer Besse Continued to Knee Alli in the face, and Officer Diperra Continued to kick and Stomp Alli's body. Captain Singletary ordered Said Officers to Stop approximately (3) three times. When they wouldn't Comply he had to pull the Officers off of alli.

77. After the malicious assault Officer Diperra Placed hand cuffs on Alli So tight that it was on the last notch. Alli was then escorted to the intake hallway. The clean gray Jumper was now Soaked in blood.

78. Alli was then Placed in a holding Pin inside Main intake. Alli was Placed in holding Pin 8 which is the "Why Me" Pin. The why me Pin is Used to Punish and torture detainee's. Said Pin is extremely Small and Contains Only a toilet and Sink. Unlike the other holding Pins this Pin doesn't have a bench or seating area. Many detainee's are held in this Pen for Multiple days and forced to Sleep on the floor or Stand for long durations. Despite the Other available fourteen (14) holding Pins Alli was intentionally Placed in Said Pen as Punishment and retaliation.

79. While confined in holding Pen 8, Alli was briefly Seen by a nurse. The nurse determined that the cuffs were on too tight and advised the officer to lossen them, She also stated Alli must be taken to the clinic for immeadiate medical attention.

80. While being examined in the Clinic, a unknown female officer asked Alli to write a statement. Alli told her he couldn't write due to a injury to his hand and offered to give a verbal statement. As Alli gave said verbal statement the female officer wrote everything down and then left. Said officer returned with a new blank inmate statement form, and asked Alli to sign said form. When alli inquired what did she do with the statement that she wrote when he gave her said verbal statement. She stated she had to transfer everything to the new form. Alli believed her then signed.

81. At this time EMS arrived and Alli was rushed to Elmhurst hospital to be treated for his injuries he sustained due to stated officers unwarranted and excessive cruel and unusual malicious assault.

82. When Alli returned from the hospital he was being treated cruel by the Prison officials. Alli was forced Appro to stay in the "Why Me" Pen for five days without showering and Proper bedding or seating. Alli was also deprived sheet, blankets, or Pillow forcing him to sleep on a bare cold floor. Approximately on the six night Alli was moved to the housing area 3 upper north side within R.N.D.C for one night.

23

83. The next morning Alli was brought to a disciplinary hearing. He never received notification of said infraction or received said infraction. At said hearing Alli was denied witnesses and was informed that the hearing would be postponed. None of the charges persented at the disciplinary was pretaining the June 2, 2009 incident.

84. After said hearing Alli was P.H.D to Punitive Segregation for the June 2, 2009 incident. And subjected to an illegal placement in non-Contact visits for his entire incarceration. Alli never had any notice of why he was being held in Punitive Segregation untill months later when he was told he had 456 Days in Punitive Segregation without any supporting details or evidence.

i. Defendants City of New York, Chair Hild2j J Simmons, Commissioner Dora Schriro, Warden Edmund Duff2j, and Deputy C. Lemon, Personal Involvement in June 2, 2009 Assault.

85. for 3years, though department report, Civil litigation, Criminal indictments, Investigation Division (ID) investigations, Inspector General (IG) investigations, Board of Correction investigation and any other investigations or discipline that may have been imposed. The City and the above stated Supervisory defendants have been aware, tolerated, participated, sanctioned, facilit4jed, witnessed and or covered up the routine, malicious unconstitutional assault's on adolescent detainees. This Longstanding deeply embedded Unwritten Custom, policy, and municipal practice caused Alli injuries. The assault described by Alli is not a isolated incident.

86. On June 1, 2007, Captain Sherman Graham and Assistant Deputy Warden Gail Lewis were arrested by the New York City Department of Investigation (DOI) for covering up an assault on an inmate. The arrest came after both were indicted by a Bronx grand Jury. On October 4, 2006 Officer Graham assaulted an inmate (Adolescent) after he refused to comply with strip searching procedures at the Robert N. Davoren Center (RNDC, C-74). The assault occured in front of 15 Correction Academy Recruits in training. After the assault, Graham ordered the Recruits to write on their use of force reports that Graham assaulted the adolescent detainee in self-defense after the inmate punched Graham. Charges against said officers include 16 Counts of falsifying bussiness records, 16 Counts of Official Misconduct and other charges. Graham and Lewis were found Guilty on Charges by a bronx Jury on May 14, 2012

87. On or about August 10, 2009 Officers Diperra, and Converington brutally assaulted a Adolescent detainee in the confines of his cell causing mutiple servere injuries including but not limited to nine stitches to his eye. The stated officers told the detainee "If you hold it down everything will be good" And "You are a gangsta right gangster's dont Snitch" SEE. Albert Fountain v. City of New York Et al 10 C.v. 7538 IBSJ)(KNF)

88. In 2010 a Adolescent detainee was brutally assaulted in two different locations of the facility, then later denied Medical Care. SEE Andy Ramos V. Capt Merced Et, AL 10-CV-8465 (JGK)(GWG)

89. SEE Also "Newland V. Achute 932 F.Supp 529."
A case in which excessive force was used against
a adolescent detainee When he did not Provoke said assault
and the Subsequent denial of Medical Care.

90. The above stated incidents are only a slight few of the
thousands of Adolescent detainee's Whom were subjected to
Malicious assaults by Correction officers and Prison officials.

91. Through Participation, Santioning, tolerating, Doc's
elaborate reports system, officers being complied upon, disciplined,
through any and all complaints wether Civil, Criminal, External or
internal, the City and Stated defendants were aware
of, Personally involved, and or Condoning the Pattern of a large
number of incidents involving Correction officers Assaulting
detainee's. Yet defendants have failed to take sufficient steps
to Curb such actions.

92. The City Ind Stated defendants were also aware of
or should have been aware of the failure of the department
to bring disciplinary Charges against those officers who
Sanctioned Participated or covered up such Practices, to
discourage others from doing so

93. Due to the City and Stated defendants involvement
in the deeply embedded Longstanding Policy of
Condoning, Sanctioning, tolerating a code of Silence, and
the failure to take remedial action, in the Malicious
beatings of Adolescent detainee's defendants have shown
Personal Involvment and direct Participation in the Underlying
Claims.

94. Also due to the failure to train, discipline, Supervise,
implement better directives regarding the use of force or

26

investigating use's of force, tolerating a code of silence, sweeping incidents under the Rug, and the failure to take remedial action to cease the unlawful conduct despite knowledge governs deliberate indifference, municipal policy and personal involvment.

ii. Additional facts.

95. Mr Alli's conduct did not warrant the excessive use of force. Mr. Alli was not aggressive, assaultive or physically resisting staff.

96. The officers involved in the malicious assault have a extensive record of using excessive force against detainee's. Despite defendants record of allegations of the misuse of force in repeated incidents the city, board, and department failed to remove the unlawfull officials from the interaction with detainee's, and or adequately investigation and or discipline said officials. Instead officers were applauded for the misuse of force and promoted to higher Ranking officials, and better working shifts or locations.

97. for instance uniformed Correction officer Now Captain Daniel Dipierri as a Low ranking Correction officer assaulted as much as 50 Adolescent detainee's within a two year frame. Dispite the ample Complaints/allegations Upon him he was still given a captain Position. Yet he conduct didnt stop once Promoted. Dipierri Continued his unlawful assaults, in which finally caught up to him.

98. Mr. Daniel Dipierri Previously a captain, was charge with It, Official Misconduct, and falsifying bussiness records for an lent on Jan 7, 2012. Video surveillance showed Mr. Dipierri

27

grabbing, Kicking, and striking a inmate who didn't retaliate, the New York City Department of investigation said Mr. Dipierri then submitted a false report saying the inmate had swung at him with a clenched fist. SEE The Wall Street Journal June 14, 2012 Article titled Five officers arrested for Rikers Attacks. SEE also the Daily News.

99. In one incident on Nov. 24, Winston Gillon, an officer at R.N.D.C was seen on video lifting an inmate upside down and droping him head first onto ~~Surveillance~~ bare metal bed While another officer watched. The surveillance footage showed also a officer named Roy Rodney on that same day punching the same inmate then placing him in a choke hold and escorting him out of the housing area with his hands around the inmate Neck. Gallon and Rodney filled reports stating that the inmate was "noncompliant and had initiated the dispute by spitting on Mr. Gillon, but the video doesn't support their version of the story.

100. Despite Many of these incidents coming to light Most of these incidents Are and tend to go uncovered due to the inmates fear of retaliation, And due to the officers submitting falsified reports to cover there malicious behaviors. These falsified reports normally place detainee's in punitive segregation for long duration for conduct they didn't committ.

100. Correction Officers and Other D.O.C Personnel have a extensive record of falsifing records And reports

iii. D.O.C History of falsifing Reports.

101. Plaintiff repeats and realleges Paragraphs 86, 98, And 99 as if they were fully Stated herein.

28

102. On May 2 another Pair of Correction Officers Kevin Gilkes, and Louis Pinto Jr were charged with assault, Official misconduct and filing false reports about a Dec. 3 altercation. The officers filed reports saying a detainee in the Rikers Island Otis Bantum Correctional Center threatened Mr. Gilkes by stepping to him aggressively. The Officers wrote Mr Gilkes defended himself then the two officers guided the inmate to the floor. But a video showed Mr. Gilkes slamming the inmate into a wall and then hitting him, the inmate stumbled and fell.

103. SEE "Stevens V. Schriro, 927 N.Y.S .2d 819(N.Y. Supp. 2010)" A Officer was fired due to giving false reports in regards to an excessive use of force.

104. Many of the incidents in which Correction officers give false statement tend to go uncovered due to them sweeping the incident under the rug and the detainee's fear of retaliation. Yet the deeply embedded Policy of falsifying reports has played a significant role in Mr. Alli's Wrongful Confinement in Punitive Segregation.

105. The city, Dora Schriro, Hildy J. Simmons, Edmund Duffy, and Carlton Lemon all created said Policy and Custom of which unconstitutional Practices occured (The assaulting of adolescent detainees and falsifying report.), Or allowed the continuance of such a Policy or Custom. The defendants was grossly negligent in supervising subordinates who committed the wrongful acts. The defendants exhibited deliberate indifference by failing to act on information indicating that unconstitutional acts were occurri

B. Due Process Claim

106. Mr. Alli Due Process Claims are very complex and consist of the alleged June 2, 2009 infractions, The alleged July 16, 2009 infraction, all of which he was denied due Process. Mr. Alli Due Process Claims also involve the denial of due Process due to D.O.C failure to Provide him with any hearing before or at the time he was returned to Punitive Segregation as a Pretrail detainee as Punishment for infraction or disciplinary ruling which occured while serving Prior sentence.

i. June 2, 2009 AND July 16, 2009 Infractions, Due Process Violations

107. After being assault on June 2, 2009, On or about June 8, 2009 Mr. Alli was taken to Punitive Segregation Alli was told he was being P.H.D (Pre Hearing Detained) and would receive a notice of Infraction and a disciplinary hearing.

108. Despite said allegation weeks Passed without Alli receiving any notification of why he was being confined in Punitive Segregation or how long was his disciplinary sentence or why he hasn't received a disciplinary hearing.

109. Several weeks After being detained in Punitive Segregation Alli was told by Mental heath Personnel he owed 456 Days in Punitive Segregation, this information was received from D.O.C's Daily Print Out Sheet.

110. Alli knowing he never received a disciplinary hearing began to Challenge the alleged disciplinary Sanction. Alli began to write Multiple Grievances, Complaints to the warden,

30

Board of Corrections, Department of Corrections, General Counsel, and Other agencys. Mr. Alli° also filled numerous Article 78's.

111. The agencys, Grevances and Complaints Alli wrote all Could not Prove or adequately State how and why he was allegedly Sentence to a 456 Day Punitive Segregation sanction.

112. Mr. Alli° was not given or aware that the disciplinary Punishment of 456 Days were imposed, issued or existed because he was never given a written disposition and had no true Knowledge that a Judgement was rendered, afforded notice of appeal, and was denied hearing.

113. After Alli° exhausted all available administrative and internal rememdys he filled an article 78 Challenging the 456 Day disciplinary Sanction and the mandated Procedures govering the underlying allege infractions not being followed. During a Article 78 Proceeding D.O.C Dora Schrro, Warden of O.B.C.C, And O.B.C.C'S CPSU Security generated a form which allegededly came from my Profile Sheet Stating On July 16, 2009 I received a infraction for "fighting with a inmate W/o (without) weapon or injury. On Said form it reported, due to said infraction Mr. Alli was Placed in Punitive Segregation for a duration of 402 Days. SEE "Exhibit A"

114. Despite the alleged nature of the alleged infraction being a Grade 3 Offense and Punishable at a 30 day Maximum Punitive Segregation Sentence, And a 402 day Sanction for "fighting with a inmate W/o injury) being impossible in accordance with D.O.C Regulations. SEE "Exhibit B" D.O.C'S Disciplinary Sentencing Chart.

Mr. Alli never received any, notice of infraction, a disciplinary
hearing, written determination of the evidence relied upon, and the
right to be heard and present a defense.

115. Mr. Alli continued to submitt grievances, grievance appeals,
complaints and follow-up complaints challenging and dissenting
his disciplinary sentence. D.O.C Officials now ("After Alli recieved
exhibit A") continued to state Alli was rendered a 406
disciplinary sanction for fighting with a inmate without any injury.

116. Mr. Alli then filled several other Article 78's disputing
his disciplinary sanction, he the received a document
stating Alli had 3 infractions from June 2 2009 which
resulted in a 456 disciplinary sentence for infraction numbers
1524/09, 1525/09, 1527/09 (see Exhibit C)

117. for all the above mentioned alleged infractions, mr. Alli
was denied due process. Mr. Alli was the rights to, be
heard by a impartial factfinder, present a defense, request
witnesses, receive notice of infractions and a written
determination of the evidence relied upon.

118. Mr. Alli did not refuse to attend any of said disciplinary
hearings nor did he post a threat or danger in being present.
Hearing officer did not find Alli guilty in a manner procedurally
proper before imposing punishment for violating alleged prison rules
Mr. Alli had the right to **heard** and be informed of the evidence
against him and the Hearing officers reliance entirely on statement
of correction officers deprived him of due process. The
unjustified denial of witnesses, conviction of a disciplinary
offense with no supporting evidence, and the failure to give
a meaningful statement of reason of conviction are all
plain violations of Due process.

ii. Defendants Ernest Brown, Dora Schriro, Hildy J. Simmons and The City Of New York have Personal involvement and or direct Participation in Mr. Alli Due Process and Box Monster Claims.

119. As the hearing officer Mr. Brown was responsible for assuring Mr. Alli received a Procedurally Proper disciplinary hearing. In accordance to the departmental regulations and rules that govern disciplinary hearings and the Federal Constitution including but not limited to the cases that govern and that Placed D.O.C On Notice Of Due Process Rights, such as "Wolf V. McDonnell", "Powell V. Ward", and their decessors. Mr. Brown deliberately failed to issue Mr. Alli a disciplinary hearing and a written determination of the evidence relied Upon in rendering a guilty verdict. If in fact a disciplinary hearing was held for the alleged infraction by Mr. Brown he intentionally denied due Process. Mr. Brown denied due Process with the intent to Punish and impose a Significant amount of Punitive Segregation day or Mr. Alli. Mr. Brown resolved the disciplinary dispute in favor of the institution and fellow Officers to make it easy for Prison officials to get away with their unlawful and illegal Practice. Mr. Brown Personally took place in the box Monster Policy/Practice and the violation of due Process.

120. The City Of New York, Dr. Dora Schriro, and Hildy J. Simmons were all on notice of Mr. Alli's Claims. The stated defendants allowed the Continuance or said Practices and or created Said Practices. Defendant was aware of Simmilar Conduct yet failed to remedy the wrong. Which allowed the Continuance of Said Policy. Mr. Alli Wrote numerous Complaints and grievance appeals

33

regarding the unlawful disciplinary sanction rendered upon him, yet defendants failed to act or change the continuing wrong.

iii Due Process Violations upon re-entry to D.O.C Custody.

121. Mr. Alli served approx 180 days in Punitive Segregation during the 2009 incarceration, from June 8. 2009 to November 25 2009. Mr. Alli was released from D.O.C Custody on November 25, 2009.

122. On ~~————~~ July 17 2010 Umar. Alli° Rentered D.O.C Custody under Umar. Alli and Book and Case Number # 241-10-07470. Mr. Alli° Was housed within Rikers Island, Robert N. Davoren. Centers General Population. Mr. Alli Was in general Population from July 17. 2010 untill November 5, 2010 Without any incident. Mr. Alli Was in general Population approximately 137 days after arrest without any due Process hearing.

123. When Mr. Alli Was taken to Punitive Segregation on November 5. 2012, No one gave him notice of why he Was being transfered to Punitive Segregation nor Was any new due Process hearing rendered.

124. On November 15, 2010 Mr. Alli Was released from Rikers Island Otis Bantum Correctional Center, Punitive Segregation unit and returned back to R.N.D.C's general Population. Mr. Alli Was taken to general Population due to mental health concerns. Although Mr. Alli Was readmitted to Punitive Segregation on December 20ᵗʰ 2010.

125. From July 17 2010 up until todays Current date Mr. Alli has yet to receive a hearing or true notice as to why he's being forced to endure the due Process Violation

34.