Cruel and Unusual Punishment. Also why he wasn't afforded any due Process hearing or any other due Process rights surrounding the Placement in disciplinary Confinement. Such as to be heard, Present during disciplinary hearing, request witnesses, review documents and other forms of evidence, Challenge or inquire the Standards of Proof against the meritless and malicious false Charges generated. Mr. Alli was denied the above Stated during the initial alleged hearing and upon reentry to D.O.C Custody. Mr. Alli was intitled to a impartial tribunal fact finder (Adjudication Officer), thus the respondent/Defendants failure to do so amounted to the defendants failure to Preform a duty enjoined upon their Scopes of authority by law thereby denying the plaintiff his right to due Process.

126. when Alli was taken to Punitive Segregation on December 20, 2010 he was taken to M.H.A.U.I.I George R. Vienro Center (G.R.V.C). Despite a Board of Correction feild representive Stating on December 19, and 20, 2010 that Mr. Alli would not be Placed in Punitive Segregation. The Board representive met with Mr. Alli on three occassions due to letters written to Hildy J. Simmons and due to a call made to the board of Correction, while Alli was in general Population, disputeing the owed disciplinary Sanction. Even while in general Population Mr. Alli wrote numerous grievances, grievance appeals, and Complaints to Hildy J. Simmons, and Dora Schriro. The field representive Stated Alli would not be Placed in punitive Segregation untill the dispute was resolved.

127. The fundamental requirement of Due Process is the opportunity to be heard at a meaningful time and in a meaningful manner. The D.O.C reliance on a hearing that allegedly took place while Mr. Alli was serving a prior sentence to justify the continuing confinement in Punitive Segregation is and should not be sufficient to meet the standards of due process. Taken to its logical extreme, the defendant position that the remainder of a disciplinary sanction may be imposed at any time in the future unchecked by further procedural review would mean that an inmate could return to DOC custody any amount of time after his release or completion of his sentence and be subjected to Punitive Segregation confinement, without the opportunity to be heard or challenge the appropriateness of his placement. This is entirely inconsistent with the requirements of the minimal Constitutional standards of Due Process.

128. The "Continuation" of the Punitive segregation sanction following the completion of a criminal sentence or release also is inconsistent with how all other prisoners are being treated around New York State. In all prisons across New York State once a inmate is release or finishes his orginial sentence, if he returns he no longer owe's a Punitive Sanction. It is undisputed that at the time the sanction was imposed it was expected that it would expire at the inmates release. The D.O.C could not have kept Mr. Alli or any other detainee incarcerated to finish out his Civil discipline. That sanction could have only lasted a day if that inmate was schedule for release at that time. The fact that a inmate is subsequently detained on unproven charges "Criminial", shouldn't serve as grounds to extend an otherwise uncompleted Civil/Punitive sanction. Since D.O.C can not continue its Punitive Punishment of detainee beyond his Criminal sentence, its clear that by relying on old information without a new review of facts.

36

The Continuation of Prior Punitive Sanction was an impermissible Punishment Of a Pretrail detainee.

129. Mr. Alli incarceration in Punitive segregation was intended as Punishment as a Pre trail detainee Violating his substantive due process rights. D.O.C's Failure to Provide Alli with any due Process Procedure at the time he was returned to Punitive Segregation as a Pre-trail detainee, or a Convicted Prisoner, Violated his due Process. Pre-trial detainee have a fourteenth Amendment right to be free from Punishment Prior to conviction. Failure of the department to Provide detainees with any hearing before they was Placed in Punitive Segregation violated Procedural due Process rights. Mr. Alli could not be held in Punitive Segregation as a Pre-trail detainee, or Convicted Prisoner for infraction of disciplinary rule which occured while Serving Prior Sentence or after release from D.O.C Custody.

130. Pursuant to Due Process, Prisoners are entitled to a hearing in Connection with the return to Punitive Segregation as a Convicted Prisoner or Pre-trial Detainee. The Sanction imposed on him during his Prior Confinement is Considered a disciplinary Sanction imposed on a new Prisoner. And therefore required a hearing. Detainees Placement in Punitive Segregation without adequate Process occured Pursuant to DOC Custom, And when a Pre-trail detainee or Convicted Prisoner was held by D.O.C and Still had time remaining on a Punitive Segregation Sanction imposed on Prior arrest, it was D.O.C's And the City's Practice to Confine the detainee in Punitive Segregation based on the Pre-existing Sanction.

131. Even assuming the record is Unclear wheter Mr. Alli was being held as Punishment, a hearing should have been held. Because the Same Conduct may be the basis for ether the Punitive Measures, nonPunitive, regulatory restrictions or Punitive

Sanction, it is often important to distinguish between nonpunitive measures and the punitive measures that are subject to due process restrictions. A due process hearing helps to ensure that disciplinary punishment is what it purports to be, rather than pushiment in advance of conviction for the crime that lead to the detention. As general matter the imposition of prison discipline is civil in nature and does not bar criminal prosecution for the same wrongful conduct. If the punitive segregation sanction does not end when a inmate completes his criminal sentence or is released, the sanction, in effect becomes an additional criminal sentence to be seaved with is unlawful.

i i i i. Defendants Budnarie Beharri, Rose Agro, Emmanuel Bailey. Dora Schriro, Hildy J. Simmons, Warden of O.B.C.C, And the City Of New York Personal involvment and Direct Participation in said Claims.

132. Mr. Alli repeates and realleges all that is stated within his Preliminary Statement as if it was fully stated herein.

133. Defendants Dora Schriro, Hildy J Simmons, Emmanuel Bailey, and Rose Agro also The City of New York are personally involved and or directly participated in the Underlying Claim due to the failure to train, discipline, supervise, tolerating a code of silence, and the failure to take remedial action to cease the Unlawful Conduct despite knowledge. Thus governing deliberate indifference, Municipal Policy and Personal involvment Also through all Prior incidents regarding similar conduct, Complaints, and departmental reports, the City and Supervisory defendants have been made aware of the widespread practices described herein. Mr. Alli submitted Countless Letters, complaints, and grievances to Dora Schriro

38.

Hildy J. Simmons, Rose AGro and Emmanuel Bailey. These reports Spurred investigation directed by the defendants. These reports specified Mr. Alli claims, Yet instead OF remedying the Wrong the Stated defendants faciliated and Sanctioned biasis investigations. Mr. Alli's Article 78's also named defendants Rose AGro, and Emmanuel Bailey as respondents thus Putting Said defendants on notice. Defendant Budharie Beharri also Participated in the Sweeping the Unlawful and Unconstitutional Practices. During an article 78 Proceedings it was Stated by the Judge David O Witt if no depositions are Produced for the alleged June 2, 2009 infractions Mr. Alli Must be released. When Rose AGro received notice OF Said determination OF Judge David O Witt, Rose AGro and Security Officer/Captain B. Beharri generated a false report Claiming to be an disposition to avoid Mr. Alli's release. See "Exhibit C". All defendants Stated herein allowed, tolerated, Sanctioned and or Participated in the Underlying claims.

C. Mr. Alli: Conditions OF Confinement And Hardship Endured.

134. Due to defendant Supervisory Officials here Stated in Actions Mr. Alli was forced to be Subjected to 456 Day in Unlawful Confinement. Mr. Alli was subjected to mutiple Changes. These Changes resulted into Fifth, Eight and fourteenth amendment violations, Loss of Liberty, Loss of amenity in Prison Living Conditions. As a Pre trail detainee Mr. Alli had a liberty Interest in not being Placed in disciplinary Confinement. As Law Pre trial detainees May not be Subjected to disciplinary action (Punitive segregation) Without due Process of Law beca they are not Under a Sentence of Confinement and therefore it

39.

it couldn't be said that they ought to Expect such restraint of a Protected Liberty interrest.

135. Mr. Alli has suffered physically, Mentally, and emotionally. Mr. Alli was denied ample rights and Priviledge's that are Mandated for general Population detainees and he was Subjected to Multiple incidents, deprivations, and Unlawful actions that could have been avoided if he was not forced to undergo said 456 day Sanction in Punitive Confinement. Mr. Alli was Unlawfully subjected to the denial Of Contact visits and given a Sanction of non-Contact visits (Booth visits) for his entire incarceration. This decession was Overturned by the board of Correction due to it being Unlawfull, yet before it was overturn Mr. Alli was subjected to booth visits for several months. Being deprived of the Priviledge to adequately interact with visitors (family, friend/s). These booth visits posed hardship On both Mr. Alli and his visitors. Due to the Conditions of the booth area including but not limited to the inability to hear your visitor speaking, Seating difficulties and no Contact.

136. During the 456 day Sanction, Mr. Alli was forced to be Confined during Holidays, Special events, and facility activity's. Mr. Alli was denied Religious Services for Months without a Penological interest. While in Punitive Segregation Mr. Alli Suffered from the death's of friends and illnessess of family members. During said Confinment Mr. Alli was maliciously assaulted on several occassions. He was Confined for 23 hours a day, Most time 24 Hours When he was deprived Of his on hour recreation. A officer Walks the Company at approximately 6 am taking a list of the inmate whom wish to be afforded their one hour recreation.

40.

When the yard officer is walking the company taking the yard list all inmates must be silent. Detainee's must stand at their gate ("cell window") with their lights on, giving the officer a head nod when he passes. The head nod means said detainee wishes to go outside. If other inmates are talking or making noise the officer is likely to deny the entire house their one hour recreation or just that side of the tier (company). This unlawful policy effects detainee's whom were wishing to go to recreation. When the yard officer makes his rounds he will not announce he is conducting a tour. Which ultimately effects the detainee's ability to make the list. Punitive segregation recreation consist of an approximately 7 by 12 feet metal cage thats located outside. Said metal cage doesn't contain any sporting or excercise material, also any contact with other detainee's are prohibited.

137. Mr. Alli cell area was approximately 7 by 7 feet. Said cell contained a small cement bed, sometimes a small cement desk, a small unvisable damaged mirror, a small metal sink and an attached metal toliet. Attached to the cell's medical door is a window thats approximately 18 to 24 inches long and 8 to 14 inches wide. Due to the location of the toilet and cell window when detaines are defecating or urinating it is visable by other detainees and prison officials. Detainees are not allowed to cover said window and doing so will result in disciplinary action or a cell extraction.

138. Mr. Alli was denied religious meals and subjected to the eating alone instead of with other detainees. Mr. Alli received his food through a food slot affix to the cell door. This food slot is often lifted and used as a cuffing port. Detainees are given a minimal duration to eat.

139. Mr. Alli was subjected to practices that violated the conditions of his confinement. Constituting cruel and unusual punishment, deprivation of basic human needs and daily life necessities. In violation of D.O.C policy (written), directives and the minimal standards.

41.

The Prison Conditions Mr. Alli was forced to undergo were harsh, humiliating, and antithetical to human dignity. Prison officials showed plain disregard to the potential risk, dangers, and future harm these conditions arose. Alli was subjected to numerous floods and sprinkler damage that destroyed the contents within his cell at times. He was also subjected to hundred of invasive cell searches in which property was often confiscated unlawfully or damaged. During said searches all detainees were forced to be stripped searched without any penological interest, in violations of D.O.C Directives.

140. Mr. Alli was sometimes denied shower usuage despite D.O.C Regulations stating a shower should be afforded daily. The shower area is often dirty with soap scum, mold and mildew. The shower is approximately 1 by 2 feet area confined within a metal caged door affix with a transparent covering. Thus allowing the naked detainee visable to ongoers.

1411. Some of the Punitive Segregations cells Alli was placed in were often dirty containing feces smothered walls. On some occassions prison officials would intentional turn off his sink and toilet water. Making it impossible to defecate, urinate, wash hands, brush teeth, drink water, and wash face or body. Alli was often denied hygeine products, bedding, blankets, cleaning supplies and toiletries.

142. The phone system is programed for punitive segregation inmates. A inmate gives a captain a list of two numbers in which he desires to call and a six digit pin number. The set access code (Pin Number) and two chosen numbers cannot be changed unless if an officer does so. On several occassions Mr. Alli was prohibited from useing the phone due to officers switching his access code or placing numbers different then what he chose. Such as Chinese resturants and etc. Alli was only allowed one six minute phone call a day (legal) and one personal phone call a week. If and when useing the phone, if no one answers and the answering machine

42.

is activated. That call is losted and said detainee must try again the next day. Most days Mr. Alli was unable to use the phone and contact family, friends, loved one's or attorney's. Growing distant to loved ones due to lost of contact.

143. Detainee's in Punitive Segregation must submit to a unlawful and unconstitutional strip search when he leaves his cell going to clinic runs, court appearances, recreation, visits, and any outside or inside facility locations. Alli did not have access to books or a library. Law library was partially avalable through the submitting law library slips (which are rarely avalable). A detainee must fill out said form and leave it in the cell gate. Somedays these slips aren't collected. Detainees are unable to do research or use the law computers. When law work is submitted it is likey to be "losted" or destroyed.

144. Alli was denied and deprived most or all of his personal property including but not limited to footwear, books, maginizines, personal clothing, watch, cosmetics, writing material, pictures, religious items and canteen. He was also denied the ability to work, attend educational and vocational programs, watch television, associate with other detainees, attend indoor or outdoor recreation in a congregational setting with the ability to engage in sports and other congregational recreational activities, attend meals with other detainee's order food from comminsary or be physically present at comminsary.

145. Mr. Alli was forced to go to court appearances with department of corrections issued prision jumpsuit instead of personal clothing. Causing family members and the judge to make assumptions.

146. Confinement in the disciplinary unit serves and is intended as punishment for the commission of alleged disciplinary infactions and past misconduct. Mr. Alli 456 day confinement and due process violations consitute infamous punishment, procedural and substantive due process violations, loss of liberty, atypical and significant ~~hardship~~, eighth, fifth, and fourteenth amendment violations

43.

All the hardship Mr. Alli could've been avoided if he was not subjected to the unlawful 456 day disciplinary confinement.

D. Mr. Alli, 18 U.S.C § 242

147. 18 U.S.C § 242, Provides If bodily injury results from the acts committed in violation of this section... the defendant shall be fined under this title or imprisoned not more than ten years or both.

148. Mr. Alli wishes to impose the sanctions of 18 U.S.C § 242 On defendants Rosney Singletary, Brian rees, Aadam Glenn and Daniel DiPierri For causing bodily injury upon. As shown in Mr. Alli's hospital report (East Elmhurst hospital, And Photographs of injury's it is evident the stated defendant caused bodily injury due to there unlawful actions. This is not stated defendants first time participating in the some underlying conduct and defendants shall be ~~_____~~ Punished for their systematic actions. Mr. Alli is requesting all defendant are imprisoned for a duration of ten years and fined for five Hundred thousand each.

E. Mr. Alli's First Amended Complaint has merit And is not time barred.

149. Generally amendments to a complaint that add new claims or parties must be made within the time set by the Statue of limitations for filing the suit. However if a new claim or defense arises from the same facts alleged in the Orginal Pleading, it may "relate back" to the time the orginial Pleading was filed. Defendants have received such notice of the institution, of the action and will not be Prejudiced. Also through out this complaint Alli asserted his claims Are Part of "Continuing" violations of his rights.

44.

F. Mr. Alli Exhausted, His Administrative Remedies.

150. Despite in accordance of D.O.C regulation disciplinary hearings and uses of force not being a "Grievable issue", Mr. Alli has still exhausted his administrative remedies or the D.O.C's own conduct inhibited exhaustion and special circumstances existed that excused the non-Performance. Mr. Alli commenced formal litigation after the defendants and the DOC failed to adequately address and or resolve any of Alli's multiple Grievances regarding the "Unlawful use of excessive force", "Unlawfull 456 day disciplinary Sanction", "The continuation of a disciplinary Sanction from a prior sentence, or after release from D.O.C custody", The denial of any disciplinary hearing and or disposition.

151. first, the grievance Procedure was not available to Plaintiff because no one adequately explained it to him and it was otherwise impossible for him to understand. Indeed, the grievance Process is such a complexity that D.O.C Personnel at all levels of employment including the Commissioner, Chair of B.O.C, Associate Commissoner, Wardens, Deputy wardens and Captains are largely Unfamilar with how the Process or manner by which inmates are required to exhaust their administrative remedies. To that end it would be unreasonable, if not impossible for Plaintiff to adequately understand the Process. Mr. Alli followed the Procedure in accordance to his vague understanding.

152. Moreover despite Plaintiff's numerous request for a Copy of the grievance directive that set forths the grievance Process, DOC staff did not Provide him with a Copy. Instead, DOC Staff including Officers, Captains and law library Personnel told Mr. Alli that he was not Permitted to have a Copy of the directive. Plaintiff was otherwise

45.

Precluded from any materials that explained the grievance process.
Mr. Alli was also retailated against on several occassions
for exhausting remedies and or filing suits.

G. Injuries

153. As a result of defendants conduct Mr. Alli has
suffered the severe injuries that are stated within
within his East Elmhurst Hospital report and Medical records
of the dated incident June 2. 2009

154. In combination of the June 2, 2009 Malicious excessive
use of forced Mr. Alli suffered extreme mental, Physical and
emotional injury through-out the date of said assault and
completion of the 456 Day Confinement. for complete detail
referr to Medical records

H. Claim for Relief

155. Mr. Alli repeates and realleges the foregoing Paragraphs
as if they were fully stated herein. Mr. Alli was deprived
due Process of law and the Eighth, fourteenth, and fifth amendment
of the Constitution. Mr. Alli was subjected to 456 days wrongfully
Confined in Punitive Segregation, a milicious assault, and
a unlawfull readmittion in Punitive Segregation. All causing
loss of Liberty in relation to ordinary Prison life, Cruel and
unusual Punishment, atypical and Significant hardship, and
excessive mental and emotional injury. All defendants
stated within the complaint acted under Pretense Color of
State law. Each defendant had Personal involvement and or
direct Participation in the claimed conduct, actions, or inaction
throughout the complaint.

156. All defendants herein knew of, Should have know, or was
made aware of Plaintiff's claims, through Simmilar conduct,
and B.O.C reports and investigation System, Mr. Alli Ver

46

and written complaints and/or direct Participation. defendants failure to take measures to curb said actions constitutes acquiescence in the know unlawful Practices and Unlawful behavior of insubordinate employes. The Prevalence of these Practices and general knowledge of their existance and the failure of defendants to take remedial action, despite the fact this issue has been Persistently brought to their attention, Constitutional violations and deliberate indifference is Constituted.

157. Defendants maintained a code of silence, Participated, sanctioned, Covered up and or failed to take any action to remedy the wrong. These Practices are so long standing and deeply embedded in the culture of the department implementing municipal Policy.

## Prayers for Relief.

158. Wherefore, Mr Alli Seek Judgment awarding damages for each asserted Claim and for Claimed injuries against each defendant. Plaintiff Seeks Compensatory damages for each Claim and violated Laws, Rights, and etc. Seperately from the violated Laws and rights Plaintiff Seeks Compensatory and Punitive damages for the Physical, Mental and emotional injury/distress. Plaintiff Seeks $200.00 (Two Hundred dollars) a day for each ~~illegal~~ day spent in wrongful Confinement/Punitive Segregation. Plaintiff Seeks a expungment of the alleged June 2, 2009 and July 16, 2009 infractions

1. Compensatory damages in the amount to be determined at trial.
2. Punitive damages against each defendant, Except

ThE City OF New York.

3. Injuntive Beleif to Cease the Continuation Of Punitive Segregation Owed days being imposed On inmates After the Completion of orginal Criminal Sentence or release from D.O.C Custody.

4. Such Other reliefs as the Court deem Just Propers.

Umar. Alli

Dated; November 12, 2012

Pro se
Umar. Alli

P.O. Box 618
Auburn, N2J

4/8.

# EXHIBIT



Exhibit 2

60 O AR

## Department Of Correction-Intradepartmental Memorandum

Date    :    October 12, 2011

To      :    Rose Agro, Warden, GRVC ( through channels)

From   :    Budnarine Behari, Captain # 1603

Subject :    **PUNITIVE SEGREGATION TIME**
             **RE:  INMATE ALLI, UMAR B&C 241-10-07470**

Submitted herein is a report regarding inmate Alli, Umar B&C 241-10-07470 punitive segregation time.

Pursuant to a complaint received that was filed by inmate Alli, Umar, Book and Case # 241-10-07470 an investigation was conducted by I, Budnarine Behari, Captain # 1603, which revealed the following:

The subject inmate is claiming that he has served his entire Punitive Segregation time that he was sentenced to.  Furthermore he is claiming that he should not be housed in MHAUII or CPSU.

Inmate Alli first entered DOC custody on March 20, 2009 under the Book and Case #241-09-03754 and was discharged on November 25, 2009.  During this time period he received a total of 4 infractions. Listed below is a chart of his infractions, the date that they occur and the total punitive segregation time he was sentenced to.

| DATE | INFRACTION # | DISPOSITION | PUNITIVE SEGREGATION TIME |
|------|-------------|-------------|---------------------------|
| 5/25/09 | 1450/09 | Guilty | 20 DAYS |
| 6/02/09 | 1524/09 | Guilty | 195 DAYS |
| 6/02/09 | 1525/09 | Guilty | 60 DAYS |
| 6/02/09 | 1527/09 | Guilty | 170 DAYS |

***All infractions occurred at RNDC.

The subject inmate was sentenced to a total of 445 days. He entered MHAUII on June 5, 2009 and was discharged on November 25, 2009 serving a total of 174 days.

Inmate Alli currently entered DOC custody on July 19, 2010 and is currently housed in MHAUII.  The subject inmate entered DOC custody owing a total of 271 days.  During his current incarceration inmate Alli has been in and out of MHAUII/CPSU on a number of occasions.  He first entered on 11/5/10 and was discharged on 11/16/10 serving a total of 12 days.  Inmate Alli again entered on 12/20/10 and was transferred to BHPW on 9/30/11 serving a total of 285 days.  During this time he received 4 additional infractions totaling 421 days. The subject inmate reentered MAHUII on 10/4/11 where he is currently serving his punitive segregation time.

170

D001258

## Statements of Facts

On July 17th 2010 the Plaintiff was arrested by the N.Y.P.D of the 43 Pct. County of the Bronx, NY and brought before the Courts of the Bronx Under Current indictment #. Later to be sent to Rikers Island R.N.D.C at 11-11 Hazen St East. Elmhurst 11370 Under Book & Case # 241-10-07470  I Plaintiff was Placed in <u>General Population</u>

Approximately 135 days later I was informed to Pack my belongings and was escorted to R.N.D.C Main intake. I was told verbally I was being transfered to Disciplinary Segregation. Alegerly for disciplinary day owed Under ailias OMAR. All Book & Case # 241-09-03754 during My 2009 incarceration. I have no such Knowlege or such days owed due to the fact I was never present at any disciplinary hearing or given a copy of infraction or disposition. During My 2009 incarceration I filed numerous complaint and Article 78's which were withdrawn due to ineffective of counsel and Officials trying to cover the officers misconduct.

During an article 78 Proceeding disputeing disciplinary owed days I was given a falsefied document allegeing I was being detained in disciplinary confinement for fighting with a inmate w/o any injury's on July 16 2009. On July 16,2009 I never had a fight with an inmate. Even so, fighting with an Inmate w/o injury is a Grade 3 Offense and only punishable the max 30 days. See falsefied document Exhibit 1. I never received a infraction or disposition for allege offense.

Months later when I refiled an article 78 I was given an infraction History 1st Alegeing I recieved 3 infractions on June 2, 2009 which equaled to me allegerly oweing 456 disciplinary confinement days.(See exhibit 2) I never received a hearing or disposition for alleged June 2, 2009 infractions. infraction numbers 1524/09, 1525/09, 1527/09

Due to all Stated facts I have no actual or factual Knowlege for my confinement in disciplinary Segregation.

I have been denied Due Process rights to Attend and or even giving notice and Knowlege of hearing, and all other constitutional 5th & 14th Amendment rights and minium standards ensured to Pre trial detainees within the body of Law.

4

D001259

# EXHIBIT



Exhibit 1

**CPSU Profile Sheet**

Inmate Name:

[Illegible Name]

| Book & Case #: | NYSID #: | Location: | City Sentenced: |
|---|---|---|---|
| 241-09-03754 | 2990652Y | 4S #31 | ☐ |

| | | | |
|---|---|---|---|
| Feb 17, 1991 | Aug 21, 2010 | 23 | Other |

**Bpa History:**

| Date Entered | Amount Days | Jail | Transfer Type | Time Cia | | | |
|---|---|---|---|---|---|---|---|
| Jul 16, 2009 | 402 | GRVC | | days | | | |

**Gang History:**

| Gang | Rank | Min Yr |
|---|---|---|

**Special Status:**

| P.I.D.S. Level | Red Level | DOC High Charge | 265.03 | Bail Status | 2,500 | Escort Type | Single |
|---|---|---|---|---|---|---|---|

| CMC | Enhanced Restraint Status | Predicate | Gay | Isolation | Sate Gys Net | PC | Tube | Red Acc. Card | Red ID Card | Sep. Order |
|---|---|---|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**Infraction History:**

| Inc Date | Jail | Infrac # | Charge | Description | Penalty | Complete |
|---|---|---|---|---|---|---|
| Jul 16, 2009 | GRVC | | 101.17 | Fighting W/ Inmate W/ O Weapon Or Injury | 402 Grvc Bing Transfer | ☐ |

Remarks:

D001257

Pursuant to the CPLR, an answer and supporting affidavits, if any, shall be served at least five days before the aforesaid date of this hearing.

On the _2nd_ day of _June_, 20_09_, an Infraction was written against me for allege violation of the following Department of Correction Detainee Conduct rule(s): _Of the following Infraction Docket No #_

_1524/09  -6-June-09_

_1525/09  6-June-09_

_1527/09  6-June-09_

_____

_____

No previous application for the relief herein prayed for has been made.

Whereupon, this petitioner respectfully request the Court to order the petitioner's immediate release from the Central Punitive Segregation Unit and dismissal of the disciplinary decision rendered on the _All dates of these Dockets_ day of _____, 20___ made and entered by the Disciplinary Hearing Judge of the Rikers Island Judicial Center, pursuant to the laws, statutes, and arguments annexed herein.

_Petitioner also prays that the Court expunged All the forementio Infraction history from his record and the relief of damage's both Compensatory and Punitive in a PER Dime Figure of # 130,00 Per day for time spent in Punitive Segregation from June 2, 2009 up until the end of this action, for the violation of his Due Process and whatever else relief the court deem just and fit._

3

D001256

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_Umar Alli_

_(In the space above enter the full name(s) of the plaintiff(s)/petitioner(s).)_

- against -

_Officer Daniel Dipierri Et.Al_

_(In the space above enter the full name(s) of the defendant(s)/respondent(s).)_

RECEIVED
SDNY PRO SE OFFICE

2012 NOV 27 P 1: 37

_12_ Civ._03947_ GBD MHD
(    ) (    )

**AFFIRMATION OF SERVICE**

I, _Umar Alli_ ___, **declare under penalty of perjury that I have**
_(name)_

served a copy of the attached _Amended Complaint_
_(document you are serving)_

and Pro se office
upon _Patrick Beath (Corporation Counsel)_ whose address is _City Law Department_
_(name of person served)_

_100 Church St, New York, NY 10007_
_(where you served document)_

U.S.D.C
S.D.N.Y
500 Pearl St,
NY, NY 10007

by _First Class MAIL_ .
_(how you served document: For example - personal delivery, mail, overnight express, etc.)_

Dated: _Auburn_ , _NY_
_(town/city)_   _(state)_

_Nov._ _12_, 20_12_
_(month)_   _(day)_ _(year)_

_Signature_

_Auburn Corr. Fac. P.O.Box 618_
_Address_

_Auburn, NY_
_City, State_

_13024_
_Zip Code_

_____
_Telephone Number_

UMAR.A
Auburn
P.O.Box 618
Auburn,New York 13024

Pro Se Office of New York
Southern District District court
United States District court
500 Pearl St.
New York,N.Y. 10007

USM
SDNY

LEGAL MAIL

AUBURN CORRECTIONAL FACILITY